***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 18 November 1999, an employment relationship existed between the plaintiff-employee and defendant-employer.
3. On 18 November 1999, Reliance National Insurance Company was the carrier at risk with Sedgwick Claims Management as the Administrator.
4. The parties stipulated after the hearing that plaintiff's average weekly wage yielded the maximum compensation rate for 1999, $560.00 per week.
5. Plaintiff's medicals regarding this claim are admitted into evidence as Stipulated Exhibit #2 and include the following:
 a) Wilmington Orthopaedic Group — Dr. Thomas Parent;
 b) New Hanover Regional Medical Center/Cape Fear Hospital; and
c) U.S. Airways.
6. Plaintiff's 6 January 2000 Recorded Statement is admitted into evidence as Stipulated Exhibit #3.
7. The following Industrial Commission Forms are made a part of the record: Forms 18, 19, 61, 33 and 33R.
8. The issues to be determined by this hearing are whether the plaintiff sustained a compensable injury on 18 November 1999; and, if so, what, if any, benefits is she entitled. And, if so, is defendant entitled to any credit and in what amounts.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On 18 November, 1999 plaintiff was a fifty year old female employed by defendant-employer as a flight attendant. Plaintiff had been employed in this capacity approximately twenty-eight years including her years with Piedmont Airlines.
2. Plaintiff's job required her to travel and stay overnight when she had a flight layover. During the overnight layovers, defendant-employer arranges accommodations for the flight attendants and other flight crew members. Transportation was also provided.
3. On 18 November 1999, plaintiff had a layover in Raleigh, North Carolina. Defendant-employer had arranged for the flight crew to stay at the Hilton. A Hilton courtesy van picked plaintiff and her coworkers up at Raleigh-Durham Airport.
4. As plaintiff exited the van at the hotel, the space between the last step and the ground was shorter than the space between the other steps. The van had also parked such that the steps overlapped the curb. As a result, plaintiff' "misstepped" and her right leg hit the ground harder than she expected. In addition to the shortened space between the steps, plaintiff expected a greater distance to the road, but instead stepped onto the elevated curb. Plaintiff immediately felt a sharp pain in her right knee.
5. Plaintiff took a few more steps, but the pain was severe, and she walked with her leg bent to try to relieve the pain. During the night, plaintiff still felt pain.
6. The next day plaintiff worked the Raleigh flight back to her Charlotte base. Since this was a "no-serve" flight, plaintiff did not have to service the passengers. As soon as plaintiff got to Charlotte, she completed an incident report. That same day, plaintiff took a non-working flight back to her home in Wilmington and sought medical treatment for her right knee.
7. Plaintiff originally saw Dr. William Sutton of Wilmington Orthopaedic group on 19 November 1999. At that time plaintiff had right knee pain upon standing, pain with flexion of the knee beyond 10° to 15° and some tenderness over the medial joint line.
8. Defendant sent plaintiff to Dr. Hershline of Workwell in Charlotte who diagnosed a bilateral knee strain. Dr. Hershline excused plaintiff from work through 22 November 1999. Plaintiff then returned to Dr. Parent, and a MRI on 1 December 1999 revealed a possible meniscal tear and condylar lesion or injury to plaintiff's cartilage. The MRI also revealed an absent cruciate ligament as a result of a previous unrelated surgery.
9. Before this work-related incident in July 1998, Dr. Parent performed surgery to plaintiff to repair a cruciate tear in her right knee. Plaintiff recovered after this surgery, returned to work and regained her normal active lifestyle. After plaintiff's 1998 surgery and prior to the work-related incident on 18 November, 1999, plaintiff had rehabilitated her knee to the extent she was running three to four miles per day.
10. As a result of plaintiff's 18 November 1999 work-related incident, plaintiff underwent arthroscopic surgery on 12 May 2000. This surgery revealed the pre-existing defective anterior cruciate ligament and a cartilaginous defect on plaintiff's medical femoral condyle. This cartilage defect appeared fresh with jagged edges and no surrounding thinning, consistent with trauma. Dr. Parent reconstructed the anterior cruciate ligament tear and performed an osteochondral autologous transplant, osteochondral autograft transfer system as a separate procedure. Plaintiff tolerated the procedure well.
11. Following surgery, plaintiff had a normal recovery. As a result of plaintiff's work-related incident on 18 November 1999, plaintiff was unable to work from 18 November 1999 through 1 September 2000. Plaintiff was actually placed back on the payroll effective 1 August 2000 but used her vacation time until she returned to work 1 September 2000. Plaintiff chose to use her vacation time and receive wages because she was a single mother and needed the income.
12. Plaintiff last saw Dr. Parent on 6 June 2000. At that time plaintiff was not at maximum medical improvement. Dr. Parent recommended plaintiff could start weight-bearing. Plaintiff did not receive further treatment from Dr. Parent because he relocated to Florida.
13. There is insufficient evidence of record to determine whether plaintiff retains any permanent partial disability to her right knee as a result of the work-related incident on 18 November 1999. The issue of permanent partial disability is reserved.
14. The greater weight of the medical evidence is that plaintiff sustained a compensable injury to her right knee arising out of and in the course of her employment with defendant-employer. Plaintiff's misstep exiting the van was an unexpected and unforeseen occurrence, constituting an unusual condition. During plaintiff's twenty-eight year career as a flight attendant, plaintiff averaged approximately twelve layovers per month where her job required her to stay overnight at defendant-employer's designated hotels. Plaintiff could not recall ever encountering a half-step, or shortened step as on 18 November 1999 before while existing a van. Plaintiff routinely traveled in courtesy vans while going to and from a hotel.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The van pulling closer to the curb and the shorter distance between the bottom step caused plaintiff to misstep. This was an unforeseen circumstance, unusual condition and an interruption of plaintiff's normal work routine. Plaintiff had never encountered this situation during twenty-eight years of employment with defendant-employer.
2. On 18 November 1999, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. G.S. § 97-2(6).
3. As a result of her compensable injury on 18 November 1999, plaintiff is entitled to temporary total disability benefits from 19 November 1999 through 1 September 2000 at her compensation rate of $560.00 per week. Defendants shall receive a credit for any monies paid to plaintiff for that time period. G.S. §§ 97-29; 97-42.
4. The issue of permanent partial impairment is reserved.
5. Plaintiff is entitled to have defendants provide all medical treatment arising from this 18 November 1999 injury to the extent it tends to effect a cure, give relief or lessen plaintiff's period of disability. G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff temporary total disability benefits at her compensation rate of $560.00 per week from 19 November 1999 through 1 September 2000. Those amounts which have accrued shall be payable in a lump sum. Defendants shall receive a credit for any monies paid to plaintiff for that time period.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff in paragraph 1of this AWARD is hereby approved to be deducted from the sums due plaintiff and forwarded directly to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury on 18 November 1999, when bills for same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedures.
4. Defendants shall pay the costs.
This the ___ day of June 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/bjp